NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BRIAN K. RUSSELL,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil No. 13-5055 (RBK)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Brian K. Russell ("Russell") for the review of the decision by the Administrative Law Judge ("ALJ") denying his claim for Disability Insurance Benefits ("DIB") under Title II and Social Security Supplemental Income ("SSI") under Title XVI of the Social Security Act ("SSA"). For the reasons set forth below, the decision of the Commissioner is vacated and remanded for further hearings consistent with this Opinion.

**I.    BACKGROUND**

Russell, a 49-year-old man, submitted an application for DIB and SSI on August 30, 2010, alleging disability as of June 29, 2010, due to ankle and back pain, an inability to stand or walk for long periods of time, difficulty interacting with others, as well as wrist pain. (Administrative Record ("Rec.") at 268, 437, 444, 466-467, 473). Russell's prior work history

includes working as a "plant cleaner" in food manufacturing and in various temporary jobs. He alleges that as of June 29, 2010, his conditions became severe enough to stop him from working.

Russell's applications for SSI and DIB were denied on December 21, 2010, and again on reconsideration on April 26, 2011. (Rec. at 259, 261). On October 8, 2010, Russell filed a written request for an administrative hearing, which was held on August 24, 2012[1] and November 27, 2012 via videoconference before ALJ Gerardo R. Picó. (Rec. at 92-148, 175-85). On December 5, 2012, ALJ Pico issued a decision denying Russell's claims, and on January 25, 2013, Mr. Russell appealed to the Office of Disability Adjudication and Review ("ODAR"). (Rec. at 71). The ODAR Appeals Council declined to review the case on July 3, 2013, making the ALJ's decision the final decision of the Commissioner. The instant action followed on August 23, 2013. (Compl. ¶ 1).

A. **Alleged Physical Limitations**

Russell alleges that he has nerve pain in his foot, trouble standing for more than five minutes, back pain, and other minor ailments. (Rec. at 457-59, 464, 467, 473). Medical records show that Russell has had back pain since at least 2005, and foot pain since 2009.[2] (Rec. at 697, 742). In addition to being prescribed NSAIDs to treat burning pain in his back, radiating pain in his left leg, and foot swelling, Russell has also received steroid injections for back pain and foot pain. (Rec. at 641, 649, 657, 859, 869, 959, 955-58). In 2008, Russell underwent a nerve-block procedure to help remedy pain stemming from lumbar disc disease. (Id.)

Various physicians at Community Healthcare and the Kennedy Health System have treated Russell; Dr. Edward Lundy has also treated him. These physicians have not found a major loss of range of movement in the upper or lower extremities, atrophy, nerve impingement,

---

[1] This hearing was deferred because Russell did not have counsel and wished to obtain an attorney. (Rec. at 185).
[2] Russell's medical records from 2004 to 2008 are handwritten and largely illegible.

or weakness in the legs. (Rec. at 728-56, 607-78, 835-95). A radiograph taken of Russell's left foot through the Kennedy Health System in 2011 showed no evidence of acute injury, fracture, or deep vein thrombosis. (Rec. at 964-65). An MRI of Russell's back taken by Dr. Lundy in 2008 showed a herniated disc with left neuroforaminal narrowing as well as Lumbar facet disease. (Rec. at 747). Reports from examining consultant Dr. Nithyashuba Khona, medical expert Dr. Jorge Hernández-Denton, and state agency consultant Dr. Joshua Weisbrod confirm that Russell suffers from these physical ailments. (Rec. at 800, 803, 804, 905, 906, 908-909, 911-12).

After reviewing Russell's medical records, Dr. Hernández-Denton found that Russell suffers from foot pain, chronic lumbar pain, limited mobility in his back, arterial hypertension, and obesity. (Rec. at 905). Dr. Hernández-Denton concluded that Russell can occasionally lift or carry 11-20 pounds, frequently lift or carry up to ten pounds, sit for one hour without interruption, stand or walk for 20 minutes at a time, and sit for six hours, walk for one hour, and stand for one hour, all in an eight-hour work day. (Rec. 908-909). Dr. Hernández-Denton also recommended Russell limit the use of his feet and hands, motor vehicles, and mechanical parts, and placed additional restrictions on non-sitting or standing postural positions. (Rec. 911-12). State agency medical consultant Dr. Joshua Weisbrod recommended limiting Russell to lifting 20 pounds occasionally, 10 pounds frequently, sitting for six hours in an eight-hour workday with regular breaks, and standing or walking for at least two hours in an eight-hour workday.[3] (Rec. at 804).

---

[3] Dr. Edward Lundy, Russell's treating physician from 2004 to 2008, did not fill out a form that had requested his recommendations about workplace limitations for Russell. (Rec. at 753-55).

### B.     Alleged Mental Impairments

Russell first began receiving psychiatric care in January 2011 at South Jersey Behavioral Health Resources Inc. from Dr. Tatyana Belinsky. (Rec. at 821). At his intake session, Russell reported having insomnia, irritability, self-isolation, headaches, depression, episodes during which he would punch walls, and rage stemming from the death of his father. (Rec. at 824). Russell has been taking Paxil since 2008 for depression and anxiety, Paraxetine for depression and rage, and other drugs for physical ailments. (Rec. at 826, 925).

Russell's condition did not improve until February 2012. In treatment notes dating June 17, 2010, to February 2012, Dr. Belinsky noted that Russell remained explosive and his symptoms improved minimally. (Rec. at 939, 941). Notes from Russell's February 24, 2012, visit, however, indicate that Russell's condition "improved," that depression related symptoms were not present, that symptoms related to a lack of concentration had decreased, and that his ability to complete activities associated with daily living had improved. (Rec. at 945). Dr. Belinsky's notes from what appears to be Russell's next visit on June 1, 2012, indicate that Russell "presented himself without any complaints. He reported his impulse control is much better [, that] his anxiety is not bothering him anymore and [that] he has a good response to Xanax as he reported not using it all of the time, but only as needed." (Rec. at 931). She further stated that his ability to partake in activities of daily life had improved. (Rec. at 932). During his appointment on September 4, 2012, Dr. Belinsky wrote that Russell "reported to be stable [,] [] [that] [o]nce in a while he has a problem with impulse control . . .[and is] [r]efusing psychotherapy." (Rec. at 935).

Russell testified in line with his medical records and stated that since February 2012, his condition has improved and he no longer "[flies] off the handle" and is able to "get away" from

4

his anger. (Rec. at 108). However, when asked about hypothetical interactions that would take place while having a job, Russell thought he would not be able to interact with supervisors because they might tell him things that he did not want to hear. (Rec. at 115-66). Although he thought he would only have issues with co-workers if they tried to engage him in banter, he admitted that he would be susceptible to work pressures relating to deadlines. (Rec. at 116-19).

Despite these improvements, however, Russell also stated that he has no friends, has no desire "to do anything anymore," has mood swings on a daily basis from agitation, and has memory issues. (Rec. at 110-12). Additionally, his anxiety impairs his ability to complete tasks and as of February 24, 2012, he no longer cooks, works on vehicles, fixes things, or participates in his other hobbies. (Rec. 113-14).

Medical expert and psychiatrist Dr. Ramon Fortuño testified that Russell's psychiatric medical records up to February 2012 indicate that if he were to have a job, he would never be able to have contact with the public, could occasionally speak with his supervisor, and could have frequent contact with coworkers. (Rec. at 102). Dr. Fortuño further stated that if Russell made improvements after February 2012, as his medical records demonstrate, he would be able to have occasional contact with the public, and frequent contact with supervisors and coworkers. (Rec. at 103). In light of Russell's medications, Dr. Fortuño further testified that before February 2012, Russell would need five minute breaks at 30, 90, or 120 minute intervals while performing simple tasks, and that he would not have been able to complete complex tasks. (Rec. at 104). Dr. Fortuño further opined that after February 2012, medical records indicated that Russell would be able to perform simple repetitive tasks without interruption, but would have

difficulty comprehending and carrying out complex instructions approximately two thirds of the time.  (Rec. 103-105).[2]

### C. Administrative Law Judge Decision

ALJ Picó found that Russell "meets the insured status requirements of the Social Security Act through December 31, 2013" and that he "has not engaged in substantial gainful activity" under 20 C.F.R. §§ 404.1571 et seq. since June 29, 2010, the alleged onset date of Russell's disability.  (Rec. at 77).  He then found that Russell's severe impairments consisted of a herniated nucleus pulposus at L3-L4 with moderate left neural foramina stenosis, status post plantar neuroma, pain disorder, arterial hypertension, obesity, mood disorder, NOS, and intermittent explosive disorder pursuant to 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c).  (Rec. at 78).  However, he concluded that this combination of impairments did not meet any of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1.  (Rec. at 78).  He further found that Russell's psychological symptoms did not meet any of the requisite impairment listings under 12.04 (Affective Disorders) because his restrictions were mild as opposed to marked.  (Rec. at 78-79).

The ALJ next evaluated Russell's residual functional capacity ("RFC") and determined that Russell has the capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b).  (Rec. at 79).  The ALJ further concluded that Russell is limited to sitting for six hours in an eight-hour workday and standing and walking for one hour in an eight-hour workday, but for only 20 minutes at a time.  (Rec. at 80).  The ALJ also noted Russell has postural limitations as to occasionally climbing and operating foot controls with his left foot.  (Id.) Finally, Russell is limited to jobs that involve no direct contact with the public, frequent contact

---

[2] Dr. Fortuño's testimony does not conflict with the findings of medical examining consultant Dr. Young Lee and medical consultant Dr. P. Polizos.  (Rec. at 778-79, 795-96).

with coworkers, occasional contact with supervisors, and simple and repetitive tasks with five-minute breaks every two hours. (Rec. at 80). In making these findings, the ALJ considered symptoms, objective medical evidence, and opinion evidence. (Id.) Specifically, the ALJ reviewed all of Russell's medical records and gave great weight to the opinions of examining consultant Dr. Khona, medical expert Dr. Hernández-Denton, medical consultant Dr. Polizos, examining consultant Dr. Lee, and medical expert and psychiatrist Dr. Fortuño. (Rec. at 80-82).

The ALJ then found that Russell was unable to perform his past relevant work as an industrial cleaner and electrician helper based on the testimony of the Vocational Expert, Mr. Luis Serrano Vega. (Rec. at 84). Based on Russell's age, education, work experience, and RFC, Mr. Vega testified that Russell could work as an addresser, surveillance systems monitor, or call out operator. (Rec. at 141-42). The ALJ adopted Mr. Vega's recommendation concluding that Russell could perform other work that exists in significant numbers in the national economy. (Rec. at 85).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing the Commissioner's final decision, the Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set

aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d at 360)).

Nevertheless, the reviewing court must be wary of treating "the existence [or nonexistence] of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d. Cir. 1978)). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at 114). As such, District Court review of the final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." Kent, 710 F.2d at 114.

### B. The Five Step Disability Inquiry

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled, and therefore, eligible for SSI benefits. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); 20 C.F.R. § 404.1520(a)(4) (2012). The Commissioner must first determine whether the claimant is currently engaged in a "substantial gainful activity" ("SGA"). 20 C.F.R. § 404.1520(a)(4). If the claimant is currently engaged in SGA, he is ineligible for SSI benefits; if not, the Commissioner moves on to step two, where she determines whether the claimant is suffering from any severe impairment. Id. Under the SSA, an impairment is "severe" when it

"significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

If the Commissioner finds that the claimant's condition is severe, she evaluates whether it meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant's physical or mental conditions meet the criteria for any impairment listed in the SSA, they are presumed disabled and entitled to benefits. Id. If not, the Commissioner evaluates the claimant's RFC and determines whether he can return to "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant is capable of returning to past relevant work, they are ineligible for SSI benefits. 20 C.F.R. § 404.1520(f). If the ALJ finds the claimant is unable to resume past relevant work, or if there is no past relevant work, the burden then shifts to the ALJ to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)); see, e.g., Markle v. Barnhart, 324 F.3d 182, 185 (3d. Cir. 2003) (providing an example where the ALJ assumed the evidentiary burden at step five despite claimant's lack of relevant work history).

## III. DISCUSSION

Russell presents two primary arguments on appeal. First, he argues that substantial evidence does not support the ALJ's RFC determination. (Pl's Br. at 8, 12-15). Second, he argues that he was not given an adequate opportunity to cross-examine Mr. Vega, the Vocational Expert. (Pl's Br. 12-14, 17).

### A. The Administrative Law Judge's RFC Determination

Russell takes issue with the ALJ's RFC determination on four separate grounds. First, he argues that the ALJ failed to show that he considered Dr. Hernández-Denton's RFC assessment. Second, he argues that the ALJ did not properly reconcile an alleged conflict between the

9

Vocational Expert's testimony and the Dictionary of Occupational Titles ("DOT").  Third, he argues that the ALJ failed to properly indicate that he considered Dr. Fortuño's testimony.  Fourth, he argues that the ALJ erroneously denied him the opportunity to cross-examine Dr. Fortuño during the administrative hearing.

### 1. The Administrative Law Judge's Evaluation of Dr. Hernández-Denton's Medical Opinion and the Vocational Expert's Testimony

Russell argues that the ALJ did not properly consider Dr. Hernández-Denton's RFC assessment, which restricted Mr. Russell to sitting for one-hour at a time, and that he did not properly reconcile the conflict between the Vocational Expert's testimony and the DOT.

As to Russell's first argument, when evaluating the opinion of a non-examining medical consultant, an ALJ must explain the weight given to this opinion in his or her decision.  20 C.F.R. § 404.1527(e)(2)(ii).  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.  SSR 96-8p.  The ALJ's RFC finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests."  Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Without this proper explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  Cotter, 642 F.2d 705 (3d Cir. 1981).

Based on the record before the Court, it appears that the ALJ did not properly evaluate Dr. Hernández-Denton's opinion, or that he disregarded portions of it without stating so in his decision.

Although the ALJ stated that he "afforded great weight" to Dr. Hernández-Denton's opinion, specifically referencing his recommendation that Russell should be limited to "lift[ing] and carry[ing] 20 lbs. occasionally and 10 lbs. frequently, sit[ting] for 6 hours in an 8-hour

10

workday, and stand[ing] and walk[ing] for 1 hour in an 8-hour workday, but [for] 20 minutes at a time," he did not adopt Dr. Hernández-Denton's recommendation that Russell have a one-hour limitation on the amount of time he can spend sitting.  (Rec. at 82).  Indeed, the ALJ found that Russell could do light work, which encompasses sedentary work, and does not allow for such a limitation.

Since the ALJ did not reference this limitation in his decision or note the conflict between his RFC determination and Dr. Hernández-Denton's recommendation, the Court cannot be sure whether he took Dr. Hernández-Denton's full recommendation into account.

As for Russell's second argument, that the ALJ did not properly reconcile an alleged conflict between the Vocational Expert's testimony and the DOT, the Court notes that the ALJ referenced Dr. Hernández-Denton's one-hour limitation on continuous sitting in a hypothetical he posed to the Vocational Expert.  In response to this long hypothetical, the Vocational Expert responded:  "Well we have the standard person that's limited to less than light work activity, comparable sedentary work activities with postural only to occasionally . . ." (Rec. at 141).  The Vocational Expert proceeded to identify "simple work that is preferable sedentary work activity." (Rec. at 141).  From this, however, it is not clear whether the Vocational Expert took the one-hour sitting limitation into account.  Indeed, the definition of sedentary work does not specifically allow for breaks after one hour, and the DOT-defined jobs identified by the Vocational Expert as jobs Russell could perform only reference that the positions are sedentary, they do not mention the ability to alternate between sitting and standing.  (Rec. at 142).

Based on the foregoing, the Court is unable to conclude that Russell would be allowed to alternate between sitting and standing on an hourly basis if he were to perform any of the jobs discussed by the Vocational Expert.  See Szaroleta v. Astrue, No. 12-04834, 2013 WL 3772838,

11

at *10 (D.N.J. July 17, 2013) (finding that a person who needs a five to ten minute break every hour to alternate between sitting and standing fulfills the requirements of sedentary work as long as their occupation allows for these breaks).

Because the Vocational Expert's testimony is ambiguous, the Court cannot determine if there was in fact a conflict between the Vocational Expert's testimony and the DOT and, additionally, whether the ALJ's step-five determination is supported by substantial evidence.  On remand, this Court directs the ALJ to take further testimony from the Vocational Expert regarding the one-hour sitting limitation, jobs available for Russell in the national economy, and the consistency of the Vocational Expert's testimony with the DOT.

Further, the ALJ is directed to clarify his consideration of Dr. Hernández-Denton's opinion and explain whether and how the recommended one-hour sitting limitation factors into his RFC determination.

### 2. The Administrative Law Judge's Evaluation of Dr. Fortuño's Medical Opinion

Russell next argues that the ALJ failed to properly evaluate the opinion of medical expert Dr. Fortuño.  (Pl's Br. at 15).  The Court agrees.

In reviewing Russell's medical records from June 2010 to February 2012, Dr. Fortuño opined that Russell would need five minute breaks every "half, one and a half hour[s] up to two hours."  (Rec. at 104).  Russell appears to argue that the ALJ did not give a reason for disregarding Dr. Fortuño's recommendation as to the proper number and frequency of breaks that Russell would need throughout the work day; indeed, had the ALJ incorporated this recommendation, Russell would have been entitled to a disability finding for the time period from June 2010 to February 2012.  (Pl's Br. at 16).

12

Dr. Fortuño testified that between June 2010 and February 2012, Russell would need a five-minute break at 30, 90, or 120-minute intervals due to the side effects of his medications. (Rec. at 104).  Dr. Fortuño further explained, however, that after February 2012, medical records suggested that he would not need these breaks.

Despite giving great weight to Dr. Fortuño's opinion, however, the ALJ does not mention Dr. Fortuño's two-tiered assessment of Russell's condition.  (Rec. at 83).  Rather, the ALJ states that "the record reveals that the treatment has been generally successful in controlling the allegedly disabling symptoms . . ." and that the record does not support "significant side effects." (Rec. at 83-84).

As there is no apparent explanation for why the ALJ determined that Russell would be entitled to five-minute breaks every two hours as opposed to five-minute breaks every thirty- or ninety-minutes, (Rec. at 80), the Court will also direct the ALJ to more thoroughly address this issue upon remand.  This is especially important in light of the fact that the Vocational Expert testified that if the ALJ had included a requirement in Russell's RFC that he would need a five-minute break every thirty minutes, Russell would be severely limited in his ability to perform any job.  (Rec. at 146).  Indeed, this finding could have led to the conclusion that Russell was disabled for the period from June 2010 to February 2012.

### 3. Mr. Russell's Opportunity to Cross-Examine Dr. Fortuño

Russell argues that the ALJ improperly ended his cross-examination of Dr. Fortuño before he was finished asking questions.  Russell does not clearly indicate what he hoped to gain from continued cross-examination, but it appears to relate to clarifying Dr. Fortuño's "need for breaks" opinion.  (Pl.'s Br. at 17).

13

Cross-examination during Social Security hearings is permitted to the extent that it is "required for a full and true disclosure of the facts." Wallace v. Bowen, 869 F.2d 187, 192 (3d Cir. 1989) (citing 5 U.S.C. § 556(d) (quoting Richardson v. Perales, 402 U.S. 389, 409 (1971). Bryant v. Bowen, 683 F. Supp 95, 101 (D.N.J. 1988) ("A claimant in a disability hearing is not entitled to unlimited cross-examination"); Copeland v. Brown, 861 F.2d 536, 539 (9th Cir. 1988).

Here, Russell's attorney questioned Dr. Fortuño for approximately eleven minutes. Instead of asking Dr. Fortuño about his opinion as to Russell's need for frequent breaks, she instead asked him a series of confusing and sometimes irrelevant questions about Russell's credibility and then repeatedly asked what effects Russell's medication would have on his concentration. (Rec. at 42-44). Russell's counsel then indicated that she wanted to change course and question Russell briefly, at which point the ALJ said, "Counselor, we're going back and forth . . ." (Rec. at 136). Russell's counsel then attempted to clarify her line of questioning as to Russell's medication, (id.), and the ALJ allowed counsel to ask Russell one more question. (Rec. at 137). When counsel tried to resume her questioning of Dr. Fortuño, however, the ALJ cut off her off over her objections. (Rec. at 137-38).

Based on the facts before the Court, the Court believes that Russell is entitled to question Dr. Fortuño further. Indeed, it appears that whether and to what extent Russell needed breaks from June 2010 to February 2012 would clarify a central issue in this case, i.e., whether Russell's need for these frequent breaks would have affected his job prospects so dramatically such that he could have been found to be disabled and thus entitled to SSI and DIB. Cf. Wallace, 869 F.2d at 194 (concluding that because the ALJ heavily relied on evidence from a consulting doctor that was adduced outside of the hearing and did not allow the claimant any opportunity to cross-

14

examine this individual, the ALJ "could have unfairly affected the ultimate result"; thus, the district court's judgment would be vacated and the case remanded with instructions to further remand the case to the Secretary so that the claimant could cross-examine the physicians); Skaggs v. Astrue, 2009 WL 2424544, *4 (S.D. Ind. Aug 6, 2009) (remanding in part because "[i]n his case, the transcript shows that a busy and impatient ALJ cut off counsel's inquiries about these matters and prevented effective cross-examination [of the vocational expert] on the critical issue in the case.").

Accordingly, on remand, Russell will have the opportunity to conduct further cross-examination of Dr. Fortuño as to this issue.

### B. Opportunity for Cross-Examination of the Vocational Expert

Russell next argues that he did not have an opportunity to fully cross-examine the Vocational Expert regarding his testimony about the DOT. (Pl's Br. at 12,14).

As discussed above, "[a] claimant in a disability hearing is not entitled to unlimited cross-examination, but rather "such cross-examination as may be required for a full and true disclosure of the facts." Bryant, 683 F. Supp. at 100 (quotation omitted).

According to the record, Russell's attorney questioned the Vocational Expert for approximately seven minutes when and it appears that counsel stated no objection on the record when the ALJ ended the proceedings.

> [ATTY]: And so I just want to make sure I heard it, because I'm sure I did but I'm not positive if I did, but you're saying that a person who had those rage issues where they walked away and could not deal with a supervisor on an occasional basis had that interaction with a supervisor, they could not hold any job in the economy, is that correct?
>
> [VE]: That's what I said
>
> ATTY: Okay thank you so much
>
> ALJ: Thank you very much. All right, well the hearing closes at 12:43.

15

[ALJ]: Before that, is your testimony consistent with the DOT?

[VE]: Yes, your honor.

ALJ: Okay.  The hearing closes at 12:43 p.m.  Thank you Ms. Jarvis and Mr. Russell for your participation and help in the proceedings.  You're excused.

(The hearing concluded at 12:44 p.m. on November 27, 2012)

(Rec. at 147-148).

Although Russell contends that he could not object because the record was closed, there appears to be at least ten to thirty seconds between the first attempt by the ALJ to close the hearing and the actual closing of the hearing during which time he could have stated his objections on the record.  (Id.)

Regardless, as the Court has already instructed the ALJ to take additional testimony from the Vocational Expert on remand, Russell will certainly have the opportunity question the Vocational Expert further.

## IV. CONCLUSION

For the reasons discussed above, ALJ Picó's decision is vacated and this case is remanded for further proceedings consistent with this Opinion.  An appropriate Order shall enter today.

Date:  9/2/2014                                                       s/ Robert B. Kugler
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge

16